UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AVR Communications, Ltd., an Israeli
corporation, and Sonovation, Inc., a
Minnesota corporation,

                Petitioners,

v.

American Hearing Systems, Inc., d/b/a
Interton, Inc., a Minnesota corporation,

                Respondent.

Civil No. 13-3027 (JNE/TNL)
ORDER

Jonathan M. Bye, Esq., Lindquist & Venum PLLP, appeared for the Petitioners.

Terrence P. Canade, Esq., Locke Lord LLP, and Jeffrey S. Storms, Gaskins Bennett Birrell Schupp LLP, appeared for the Respondent.

This is a petition to confirm a foreign arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter, "the Convention"), Sept. 1, 1970, 21 U.S.T. 2517, and its implementing legislation at 9 U.S.C. Chapter 2. The Petitioners are AVR Communications, Inc., an Israeli corporation that develops, produces, and sells hearing aid technology, and Sonovation, Inc., its wholly-owned subsidiary that is incorporated in the United States. The Respondent is American Hearing Systems, Inc., a Minnesota corporation that does business as Interton, Inc. Like the Petitioners, Interton also produces and sells hearing aids.

AVR and Sonovation have brought the petition requesting that this Court recognize and enforce an award that they received in an arbitration proceeding against Interton in Israel. Interton opposes the petition.

For the reasons stated below, the Court will grant the petition.

**Background**

In 2004, Interton and AVR entered into a written Investment Agreement, according to which Interton acquired a 20% interest in AVR, obtained a seat on AVR's Board of Directors, and provided a sum of money "to be dedicated for R&D projects to be carried out by [AVR] in the area of wireless FM communications and digital signal processing." ECF No. 2 at 5-6. The Investment Agreement also includes a statement of "[t]he parties' intention . . . that Interton will acquire from [AVR] products deriving from such R&D projects." *Id.* at 5.

The Investment Agreement contains an arbitration clause, which is incorporated by reference from a separate Stock Purchase Agreement that AVR had signed with several other investors in 1997. ECF No. 2 at 5, 50. This provision is the only agreement to arbitrate that exists between the parties. It reads as follows:

> Arbitration. This Agreement shall be construed and enforced in accordance with the laws of the State of Israel.  Any dispute between the parties related to (or arising out of) the provisions of this Agreement or any of its Exhibits will be referred exclusively to the decision of a single arbitrator appointed by mutual consent, and failing such consent within 10 days from the date on which an affected party first requested arbitration - the Arbitrator will be appointed by the President of the Israel Bar Association.  The Arbitrator will be bound by Israeli substantive law but will not be bound by the rules of evidence or the rules of civil procedure.  The Arbitrator will be required to provide the grounds for his ruling in writing.
> The competent court will have such supplementary jurisdiction for all issues arising and/or relating to the Arbitration as is provided by the Arbitration Law of 1968, and/or may be necessary to resolve such dispute.

*Id.* at 50.

Disputes arose between the parties in the years after the Investment Agreement was signed.  One dispute centered on Interton's obligation to acquire two products that AVR had developed – referred to as the "DFC technology" and the "W.C. components" – and integrate them into its hearing aids.  AVR took the position that Interton had undertaken those obligations

as a result of negotiations that took place between the parties in the months surrounding the signing of the Investment Agreement.  In 2007, AVR and Sonovation initiated arbitration proceedings against Interton in Israel over this and other disputes pursuant to the arbitration clause in the Investment Agreement.  AVR and Sonovation's Statement of Claim asserted a number of breach of contract and tort claims and demanded tens of millions of dollars in damages.

Interton immediately contested the arbitrability of the claims, arguing to the Israeli courts that they were not encompassed by the agreement to arbitrate in the Investment Agreement.  However, Interton's narrow reading of the arbitration agreement was rejected by both the Tel Aviv District Court and the Supreme Court of Israel.  Applying, as the Investment Agreement specified, Israeli law, the Israeli Supreme Court on appeal did a close reading of the arbitration provision and determined that Interton had agreed to arbitrate

> the arguments of the parties raised on the grounds of torts and deriving from the Investment Agreement, as well as arguments concerning conducting of negotiations prior to the engagement in the Investment Agreement and as regards the undertakings of [Interton] that were indeed made (to the extent that made) a few months after the Investment Agreement, however they are related to the Investment Agreement and/or arising out of it.  Note well – this does not mean that any dispute and disagreement between [Interton] and [AVR and Sonovation] will be heard as part of an arbitration proceeding, however only disputes and disagreements pertaining to or arising out of the Investment Agreement.

ECF No. 5-1 at 8 (English translation of Hebrew original).  With the scope of the arbitration agreement thus defined, the Israeli Supreme Court decided that "the causes of action that are specified in the Statement of Claim submitted by [AVR and Sonovation] against [Interton]" – which included the claim regarding the DFC technology and the W.C. components – "should all be heard as part of an arbitration between the parties." *Id.* at 7.

Several years of arbitration proceedings then ensued in Israel. Interton participated in those proceedings and vigorously defended itself against AVR and Sonovation's claims. After numerous motions and evidentiary hearings, the arbitrator issued a written decision on November 29, 2011, ECF No. 5-1, Ex. 2 at 17-32, which he amended shortly thereafter on December 11, 2011, ECF No. 5-1, Ex. 3 at 34-37. Interton challenged the arbitrator's decision in the Israeli courts on substantive grounds, in response to which the arbitrator supplemented the decision with additional reasoning on October 24, 2012. ECF No. 5-4, Ex. 7 at 20-30.

The arbitrator rejected all of AVR and Sonovation's claims except those regarding the DFC technology and W.C. components. On those claims, the arbitrator found that Interton had entered into and breached two binding oral contracts, ancillary to the Investment Agreement, to purchase and market particular quantities of those devices. To remedy those breaches, the arbitrator awarded AVR and Sonovation $2.675 million in damages and one million Israeli New Shekels in fees and expenses. ECF No. 5-1 at 34-37.

Interton moved to revoke that award in the Haifa District Court, challenging the arbitrator's reasoning and his handling of certain evidentiary issues. However, after Interton failed to deposit a $1 million guarantee that the courts had ordered, the Haifa District Court summarily rejected the motion and entered judgment on the award on July 22, 2013. ECF No. 5-5, Ex. 10 at 50-53. Interton appealed that ruling to the Supreme Court of Israel, which affirmed it on October 28, 2013. ECF No. 4 at 2-8.

One week after the arbitrator's award thus became final in Israel, AVR and Sonovation brought this petition requesting that this Court recognize and enforce it in the United States under the Convention. Interton opposes the petition.

4

## **Discussion**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards entered into force in the United States in 1970. It contains two complimentary directives for U.S. district courts. First, where parties have entered into a valid, written, international, commercial arbitration agreement, Article II of the Convention requires district courts to give effect to that agreement by declining to hear their dispute and referring them instead to the arbitration proceedings they agreed to utilize. Second, where the parties have already concluded foreign arbitration proceedings, district courts are to recognize the arbitral award "as binding and enforce [it] in accordance with the rules of procedure of the [United States], under the conditions laid down in" Articles III-V of the Convention.

Accordingly, under the implementing legislation, a party who has received an award in a foreign commercial arbitration may file a petition for an order confirming that award in any district court "in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . . ." 9 U.S.C. §§ 203, 204, 207. The petition must be accompanied by both the arbitrator's award and the parties' written agreement to arbitrate. Convention Art. IV(1). Upon a properly filed petition, the district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207.

The grounds on which a district court may refuse to recognize and enforce a foreign arbitral award are listed in Article V of the Convention. The burden is on the respondent who opposes the petition to establish that:

> (a) The parties to the agreement [to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

    (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

    (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

    (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

    (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention Art. V(1). In addition, a court may refuse to recognize and enforce a foreign arbitral award if it determines that doing so would be contrary to domestic public policy or if the parties' dispute is not capable of settlement by arbitration under domestic law. Convention Art. V(2).

In accordance with the Convention's "general pro-enforcement bias," *Parsons & Whittemore Overseas Co. v. Societe General de l'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2nd Cir. 1974), these seven grounds for refusing to confirm an award have been held to be exclusive. *See, e.g., Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir. 1997). As a result, an opposed petition to recognize and enforce a foreign arbitral award in a U.S. district court involves a more limited and circumscribed inquiry than an action to set aside or vacate the same award brought in the foreign country in which, or under the law of which, it was rendered.

Here, without citing any Article V ground at all, Interton argues that the Court should deny AVR's petition because of "one core issue: [t]he award does not arise from a written arbitration agreement." ECF No. 17 at 7. Put another way, Interton urges the Court to "refuse to confirm the Israeli abitral award . . . because the award arose from two oral agreements [regarding the DFC technology and W.C. components] that do not contain valid agreements to arbitrate." *Id.* at 9.

As an initial matter, the parties do of course have a written agreement to arbitrate – the arbitration provision in the Investment Agreement. It is true that the arbitrator's decision makes clear that the arbitral award arose from Interton's breach of oral contracts to purchase and market AVR's DFC technology and W.C. components, and that those oral contracts did not contain their own arbitration provisions. But, it is equally clear that the parties entered into a broadly-worded arbitration agreement when they memorialized their ties in the Investment Agreement, and that the Israeli courts – to which Interton itself turned to challenge the arbitrability of the claims – found that it encompassed the dispute over the DFC technology and W.C. components.

AVR and Sonovation have properly submitted this written agreement to arbitrate here with their petition. Interton does not challenge the authenticity of the Investment Agreement or the arbitration provision it incorporates, nor does it make any argument that they are invalid or unenforceable for any reason. Thus, despite the way Interton frames its opposition to the petition, the heart of this matter is whether the valid written agreement to arbitrate that does exist and bind the parties encompasses the particular dispute that gave rise to the arbitral award – in other words, it is a question of scope. Article V(1)(c) of the Convention is therefore implicated. As previously noted, that ground calls for the Court to refuse to confirm a foreign arbitral award if the respondent establishes that "[t]he award deals with a difference not contemplated by or not

falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ."

With that said, the Convention does not on its face specify *how* the scope of the parties' agreement to submit disputes to arbitration is to be determined.  Interton would have it that this Court is obliged to make a de novo determination of the arbitrability of the dispute that formed the basis of the arbitral award using domestic law, without reference or deference to the Israeli courts' decision; indeed, the whole of its opposition to the petition rests on this premise.

However, the two principle cases Interton cites in support of its premise – *China Minmetals v. Chi Mei Corp.*, 334 F.3d 274 (3rd Cir. 2003) and *Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2nd Cir. 2005), ECF No. 17 at 8-10 – are off point.  Those cases concerned a district court's obligation to independently determine the *existence*, not the scope, of a valid written arbitration agreement as a precondition to hearing a petition under the Convention.

In *China Minmetals*, the petitioner had initiated arbitration proceedings in China pursuant to two purported contracts that contained written arbitration clauses.  334 F.3d at 278.  The respondent argued that the contracts had been forged, but the arbitrators found the contracts to be legitimate and awarded several million dollars to the petitioner.  *Id.*  The petitioner then brought an action to recognize and enforce the award, which the district court granted without conducting an evidentiary hearing into the validity of the contracts.  *Id.*  On appeal, the Third Circuit closely examined the structure and purpose of the Convention as a whole and concluded that a district court may properly refuse to enforce a foreign arbitral award where no valid written agreement to arbitrate exists between the parties.  *Id.* at 286.  The case was therefore remanded for the district court to determine whether the contracts presented by the petitioner were genuine or forgeries.  *Id.* at 289-90.

In *Sarhank*, the Sarhank Group and Oracle Systems had entered into an international commercial contract that contained an arbitration provision. 404 F.3d at 658. When a dispute arose, Sarhank initiated arbitration proceedings in Egypt against both Oracle Systems and Oracle Corp., Systems' U.S.-based parent company. *Id.* Oracle Corp. objected to its inclusion in the arbitration, arguing that it was not a party to the contract between Sarhank and Oracle Systems and therefore had not consented to arbitration. *Id.* The arbitrators rejected that argument and issued an award in Sarhank's favor, for which it deemed Oracle Systems and Oracle Corp. to be jointly and severally liable. *Id.* at 658-59. Sarhank then petitioned a U.S. district court to recognize and enforce its award against Oracle Corp. *Id.* at 659. The district court granted the petition, but the Second Circuit vacated and remanded for a determination as to whether Oracle Corp., as a non-signatory to the contract containing the arbitration provision, was bound "on any basis recognized by American contract law or the law of agency" by Oracle System's agreement to arbitrate with Sarhank. *Id.* at 662-63.

These cases, then, do not in fact dictate that the Court must undertake its own analysis of the arbitrability of the dispute underlying the award in these circumstances. Instead, they confirm that a district court is obliged to make its own threshold determination that the written arbitration agreement submitted by the petitioner along with the arbitral award is valid and binding on the respondent, regardless of the fact that a foreign arbitration has already taken place. *China Minmetals* and *Sarhank* are thus in line with decisions of other courts that have found the existence of a valid and binding written arbitration agreement – whatever its content – to be a "prerequisite" to an action to enforce a foreign arbitral award. *See, e.g., Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004) ("Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of

jurisdiction."). Because Interton does not contest the validity or enforceability of the written arbitration agreement that AVR and Sonovation submitted here, these cases are inapposite.

Interton's position – that it is left to this Court to make a de novo determination of the arbitrability of the dispute underlying the award in accordance with domestic law – could well be the default rule for Article V(1)(c).  *Cf. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  However, even if it is, the parties overrode that default here when they unambiguously agreed to the contrary in the arbitration provision itself, which specifies that "[t]his Agreement shall be construed and enforced in accordance with the laws of the State of Israel" and that "all issues arising and/or relating to the Arbitration" are to be resolved by the Israeli courts having jurisdiction over the proceedings pursuant to the Israeli Arbitration Law of 1968.  These terms – clear though they are – do not make even a cameo appearance in Interton's submissions.

Whether the dispute over the alleged oral contracts between AVR and Interton fell within or without their arbitration agreement was a question of its scope.  Parties may agree to arbitrate the scope of arbitration; in the absence of such an agreement, they turn to the courts for a decision.  Here, AVR and Interton contemplated that the courts, rather than the arbitrator, would determine the scope of their arbitration.  In fact, they not only specified which law would apply to the question (Israeli law), but also which courts would supply the answer – the Israeli courts.

And that is what happened.  Interton itself took its scope arguments to the Israeli courts, and no less a tribunal than the Supreme Court of Israel construed the arbitration provision in accordance with Israeli law and concluded that the parties' agreement is worded broadly enough to encompass their dispute over the DFC technology and W.C. components.  Unless the Israeli Supreme Court made a radical mistake in applying Israeli law – and Interton does not argue that

10

it did – this outcome could reasonably have been within the contemplation of the parties when they selected their law and forum. Indeed, though Interton of course disagrees with the result of the process it agreed to utilize, it does not assert that it was not fully heard on the issue, or that the Israeli courts did not have jurisdiction, or that their decisions were biased in any way.[1] In these circumstances, Interton's argument has come to a dead end. The parties bargained for the arbitrability of their disputes to be determined by Israeli courts applying Israeli law, and there is no avenue for this Court to rescind that agreement here.

In sum, Interton not only agreed to arbitrate all disputes "relating to (or arising from)" the Investment Agreement in Israel, but also agreed that the scope of that clause would itself be determined by Israeli courts and in accordance with Israeli law. Those terms are clear, unambiguous, and consequential. This Court may not, consistent with the Convention, allow the parties to re-litigate the construction of their arbitration agreement here.

THEREFORE, IT IS ORDERED THAT:

1. Petitioner's Petition to Confirm Foreign Arbitral Award [ECF No. 1] is GRANTED.

2. The Arbitrator's Award of November 29, 2011 [ECF No. 5-1, Ex. 2 at 17-32], as amended by the Decision of December 11, 2011 [ECF No. 5-1, Ex. 3 at 34-37] and the Reasoning Supplement of October 24, 2012 [ECF No. 5-4, Ex. 7 at 20-30], is CONFIRMED.

---

[1] Interton does object to the Israeli courts' requirement that it post a guarantee as a precondition to hearing its appeal of the arbitrator's award, and notes its belief that this "pay-to-play" requirement is inconsistent with due process. ECF No. 17 at 6 n.1. However, the Haifa District Court and the Israeli Supreme Court required Interton to post the guarantee only when it sought review of the substance of the arbitrator's award in 2012-13. Interton was not subject to this requirement and was fully heard on the merits when it contested the arbitrability of AVR and Sonovation's claims in the Tel Aviv District Court and the Supreme Court of Israel in 2007-08.

3. Judgment is ENTERED, in accordance with the confirmed arbitral award, in favor of Petitioners AVR and Sonovation and against Respondent Interton as follows:

   a. Respondent will pay Petitioners $2,675,000 in damages, plus 4% annual interest from January 1, 2007 until payment is made and linkage to the Israeli Consumer Price Index from December 11, 2011 until payment is made;

   b. Respondent will pay Petitioners 1,000,000 Israeli New Shekels in fees and costs, plus 4% annual interest and linkage to the Israeli Consumer Price Index from December 11, 2011 until payment is made;

   c. Respondent will pay Value Added Tax in accordance with Israeli law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 31, 2014                         s/Joan N. Ericksen
                                                The Honorable Joan N. Ericksen
                                                United States District Judge